UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20444-BECERRA

UNITED STATES OF AMERICA,

       Plaintiff,

v.

VICTOR HUGO CARDONA-LONDONO,

       Defendant.
_____/

## SENTENCING MEMORANDUM

The Defendant, VICTOR HUGO CARDONA-LONDONO, through undersigned counsel, submits this memorandum in aid of sentencing. For the reasons explained *infra*, it is respectfully requested that this Court impose a sentence "sufficient, but not greater than necessary" to comply with the goals of sentencing. *See* 18 U.S.C. § 3553(a).

## INTRODUCTION

On September 13, 2024, Mr. Cardona-Londono pleaded guilty in this matter. (DE 140). Thus, this Court must now impose a sentence that gives fair weight to "the history and characteristics of the defendant" while being "sufficient, but not greater than necessary" to serve the statutory purposes of federal sentencing. 18 U.S.C. § 3553(a)(2).

Mr. Cardona-Londono is 45 years old and, until the instant case, he has never been arrested or charged with a crime. Mr. Cardona-Londono has now pleaded guilty and has accepted responsibility. Indeed, immediately following his arrest, Mr. Cardona-Londono met with agents, and without the assistance of an attorney, provided a detailed statement of the offense and those that were involved. PSI at ¶'s 29-32. Once he was

extradited to the United States, he again offered to provide any assistance he could to law enforcement. This is indicative of Mr. Cardona-Londono's willingness to make amends and change the direction of his life.

The instant sentencing memorandum is being offered to assist the Court in fashioning a just sentence for Mr. Cardona-Londono. In assessing what sentence is reasonable under 18 U.S.C. § 3553(a), and given the totality of the circumstances, Mr. Cardona-Londono respectfully requests that this Court impose a sentence "sufficient, but not greater than necessary" to comply with the goals of sentencing. *See* 18 U.S.C. § 3553(a).

## **CONTROLLING LEGAL PRINCIPLES**

Certainly, this Court knows well its sentencing mandate. The Sentencing Guidelines are "effectively advisory," and the guideline range established by this Court at sentencing is but only one factor that must be considered in arriving at a reasonable sentence under 18 U.S.C. § 3553(a). As such, sentencing decisions are subject to a "reasonableness" standard of review which must be measured against the factors outlined by Congress in Section 3553(a). *United States v. Booker*, 543 U.S. 220 (2005). Thus, this Court may find that specific guideline provisions fail to properly reflect § 3553(a) considerations, reflect unsound judgment, or that a different sentence is appropriate than the guidelines range. *Rita v. United States*, 127 S. Ct. 2456, 2465, 2468 (2007).

This Court may certainly disagree with a particular guideline on policy grounds and may impose a non-guideline sentence. *Kimbrough v. United States*, 128 S. Ct. 558, 566-69, 574-75 (2007).  "Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable." *Nelson v. United States*,

555 U.S. 350, 352 (2009) (per curium). "The guidelines are not only *not mandatory* on sentencing courts; they are also not to be presumed reasonable." *Id.* (emphasis added). In other words, sentencing courts commit legal error when they use a Sentencing Guideline range as a default sentence, unless reasons exist to impose a sentence inside that range.

Stated simply, Congress requires federal courts to impose the least amount of imprisonment necessary to account for the considerations and accomplish the sentencing purposes set forth in 18 U.S.C. § 3553(a). Doing so requires consideration of the nature and circumstances of the offense, the history and characteristics of the defendant, and the kinds of sentences available. *See Id.* at § 3553(a)(1), (3)-(4). The purpose of sentencing also includes the need for the sentence imposed to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (B) afford adequate deterrence; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with education or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2)(A)-(D).

### APPLICATION OF THE SENTENCING MANDATE IN THE INSTANT CASE

**A.   Section 3553(a)(1) - the nature and circumstances of the offense and Mr. Cardona-Londono's history and characteristics**

**1.   The Nature and Circumstances of the Offense**

Mr. Cardona-Londono pleaded guilty to Count One of a three-count Indictment. (DE 140). Count One charges him with Conspiracy to Distribute Five Kilograms or more of a Mixture and Substance Containing a Detectable Amount of Cocaine, in violation of 21 U.S.C. § 959(a). As to Count One, the mandatory minimum term of imprisonment is

ten years.

The offense involved Mr. Cardona-Londono meeting with a UC and handing the UC a suitcase containing 24 kilograms of cocaine. PSI at ¶ 14. Upon Mr. Cardona-Londono's arrest, he immediately expressed his remorse to law enforcement and provided them with a complete statement of his conduct detailing what he knew about the conspiracy. PSI at ¶'s 29-32. Upon his arrival to the United States, Mr. Cardona-Londono did everything he could to make amends including immediately expressing his remorse, accepting responsibility for his conduct, and offering to assist the Government in any way he could through his cooperation.[1]

**2.      Mr. Cardona-Londono's Family History and Personal Characteristics**

Mr. Cardona-Londono was born on April 17, 1979, in Bogota, Colombia. His father abandoned him at an early age. His mother did her best to raise him on her own but eventually sent him to live with his paternal grandmother who raised him. His paternal uncle assumed the role of his father during his childhood. The absence of Mr. Cardona-Londono's father was very difficult for him. Mr. Cardona-Londono, at a young age went to look for his father. He eventually was able to locate him and the two were reunited for a short period of time. Unfortunately, Mr. Cardona-Londono's father passed away shortly thereafter from complications of a brain aneurysm.

Mr. Cardona-Londono's biggest joy in his life are his children, ages 8 and 4. Prior to his arrest, Mr. Cardona-Londono was a very involved father. Since his incarceration[2],

---

[1] Due to the passage of time, his cooperation was not necessary.
[2] Mr. Cardona-Londono has been incarcerated for almost two years as he was arrested in Colombia on January 31, 2023.

he has not had physical contact with his children. His absence has caused tremendous emotional hardship for his children as he is unable to remain an active presence in their life. A sentence of lengthy incarceration will only separate him further from his children at a time when they need the stability of their father's presence.

Mr. Cardona-Londono will also certainly undergo immigration proceedings following the resolution of this case. In all likelihood, he will be held in custody during the pendency of those proceedings, which can be extremely lengthy.

Mr. Cardona-Londono's life has included tremendous acts of kindness and compassion towards others even when he was incarcerated at the Picota Prison in Colombia. Consideration and credit should be given against the severity of whatever punishment may be imposed. The following excerpts of letters of support show what kind of person and father Mr. Cardona-Londono is:

- Mr. Cardona-Londono's partner, Yesica Toro Arango, states that it was "impossible for [her] not to fall in love with his noble heart" and that "day by day [she] saw his warmth with others and how with much or little that he had he tried to help the people around him" and that "there is not a day that goes by that [her] 4-year-old-son son does not ask [her] for an explanation for his father's return."

- Mr. Cardona-Londono's mother-in-law, Maria Adiela Arango Lopez, states he is an "excellent human being" and "a good son, father, husband, son-in-law, friend, neighbor" and that the "family misses him."

- Mr. Cardona-Londono's sister-in-law, Isabela Toro Arango, states that he "is always one of the people [she] admires the most due to his ability to always maintain a positive mind" and that he "always showed [her] the beauty of life and also that there are difficult things but at the same time he taught [her] how to overcome them." She also describes Mr. Cardona-Londono as a "very hard-working and resilient man, very family oriented and also affectionate."

- Mr. Cardona-Londono's cousin, Katherine Cardona G., states that he is an "exemplary man totally dedicated to his family and especially to his

- children, always willing to help people who need it" and that he is "very responsible, hard-working and generous."

- Mr. Cardona-Londono's friend, Mileidy Gutierrez Valencia, states that she "worked with him and [she] is grateful and thankful to him, since when [she] was going through a difficult situation, he was the one who gave [her] work and often a plate of food" and that he is "an excellent human being, an excellent son, father, husband, and as a friend he is the best."

*See* letters attached at Exhibit A. Mr. Cardona-Londono's entire family is heartbroken as he has been away from home for almost two years. This absence, alone, has been a significant punishment for Mr. Cardona-Londono, who loves his family.

Mr. Cardona-Londono also assisted other inmates and staff while incarcerated at La Picota Prison in Bogota, Colombia. Indeed, Monica Quintero Bravo, the Health Auditor at the La Picota Prison wrote a letter on behalf of Mr. Cardona-Londono and describes him as having "dedication, passion and commitment to his duties, work and positions acquired in the health area" and that "[h]is ability to face and overcome challenges with determination and creativity is one of his exceptional qualities." *See* letter attached at Exhibit B. According to Ms. Quintero Bravo, she has witnessed Mr. Cardona-Londono provide answers and solutions to health problems of patients who were in confinement and directing their treatments. *Id.* She has also seen "his leadership and his ability to work as a team." *Id.* Lastly, she states that "[h]is work ethic, integrity and constant desire to learn make him a responsible and outstanding person in whatever he sets out to do" and she "appreciate[s] his collaboration with the specialists he assisted during his time" at La Picota Prison in Bogota. *Id.*

3. **Conditions of Confinement**

For over a year and a half, Mr. Cardona-Londono was imprisoned at La Picota

Prison in Bogota, Colombia. The prisons in Colombia are overpopulated by 53%, and are plagued by corruption among the guards, drug use by the inmates and extortion by violent gangs made up of inmates. One commentator described Colombian prisons as having a "dangerous and dehumanizing effect" and as a "factory of monsters who sooner or later will be thrown into society." *Doing Time in a Colombian Prison*, Bogota Post, January 24, 2018. As this Court is aware, conditions of confinement are a factor appropriately considered by a sentencing court in fashioning a just sentence.

**B.     The Need for the Sentence Imposed**

**1.     Seriousness of Offense, Respect for Law, and Just Punishment**

Given his felony conviction, Mr. Cardona-Londono's potential sentence reflects the seriousness of his offense, promotes respect for the law, and provides just punishment for his criminal conduct. Mr. Cardona-Londono has certainly accepted personal responsibility for his offense and has done so since his arrest. As evidenced by the sentencing letters to the Court and Mr. Cardona-Londono's post-arrest behavior, Mr. Cardona-Londono feels great remorse for his conduct and is ready to live a law-abiding life.

**2.     Deterrence**

The sentence requested at Mr. Cardona-Londono's sentencing will provide ample specific deterrence. Mr. Cardona-Londono has lived a law-abiding life. There is every reason to believe that his conviction in this case, the requested sentence, the tainting of his reputation, the fact that he is away from his children, his family, and friends, all taken together, have sufficiently deterred Mr. Cardona-Londono from any future misconduct. With respect to general deterrence, the Government's prosecution of individuals like Mr.

Cardona-Londono, resulting in felony convictions and terms of imprisonment away from family, should be more than sufficient. Individuals contemplating similar misconduct will learn that Mr. Cardona-Londono, and those similarly situated, were imprisoned away from home and their family and friends. While some may argue that the greater the sentence imposed, the greater the deterrence, empirical evidence establishes just the opposite.

> Evidence does not support any significant public safety benefit of the practice of increasing the severity of sentences by imposing longer prison terms. In fact, research findings imply that increasingly lengthy prison terms are counterproductive. Overall, the evidence indicates that the deterrent effect of lengthy prison sentences would not be substantially diminished if punishments were reduced from their current levels.

*Deterrence in Criminal Justice-Evaluating Certainty vs. Severity of Punishment*, November 2010, The Sentencing Project.

3.     **Protection of the Public**

Mr. Cardona-Londono is not a danger to the public. His desire to lead a better life is apparent is evidenced by his efforts to cooperate immediately upon his arrest and upon his extradition to the United States. Also, when coupled with his past history and the lack of any history of violence, he also does not pose a significant danger to society, and the requested sentence will aptly serve the interests in protecting the public, specific deterrence, and rehabilitation.

4.     **Education/Vocational Training or Correctional Treatment**

The Bureau of Prisons will consider Mr. Cardona-Londono differently than other inmates who are citizens of the United States.  As a foreign national, he will not be eligible to be placed in a minimum-security institution or other programs offered by the BOP to earn time reductions under The First Step Act and otherwise including the Residential

Drug Abuse Program "RDAP". Nor will he be eligible with six months remaining on his sentence to be transitioned to a halfway house. Instead, after serving his full sentence he will be handed over to ICE to await deportation, a process that can easily take three to six months and most likely will send Mr. Cardona-Londono to another institution that keeps its charges in a lockdown situation, without yard privileges or the ability to take courses or work. Mr. Cardona-Londono may find himself incarcerated at least nine months longer that his American counterparts because of BOP and ICE policies.

**5. A below-range sentence does not run afoul of the goal of avoiding unwarranted sentencing disparity**

The Court must also consider the need to avoid unwarranted disparities among similar offenders. 18 U.S.C. § 3553(a)(6). However, this preference is not to avoid all disparities at all costs. Rather, it is to avoid unwarranted disparities, disparity remains an ameliorative tool to adjust the guidelines because "[f]air sentencing is individualized sentencing." *Fifteen Years of Guidelines Sentencing*, at 113 (Nov. 2004).

With respect to the sentencings in this case, it is noted that several of Mr. Cardona-Londono's co-defendants in this matter have already been sentenced. PSI at p. 2. Augusto Gomez-Zuluaga was held accountable for 40 kilograms and sentenced to 60 months of imprisonment. Co-defendant, Fabian Emilio Paredes-Aristizabal, was held accountable for 30 kilograms and sentenced to 57 months of imprisonment. *Id.* However, not only was Mr. Paredes-Aristizabal involved in the 30 kilogram deal he was held accountable for which took place on August 3, 2021, but he was also involved in a 70-kilogram deal that took place on August 19, 2021. PSI at ¶'s 23-25. Specifically, on August 19, 2021, Co-defendants Varon, Arciniegas, and Paredes-Aristizibal met with a CS and

discussed 70 kilograms of cocaine going to Los Angeles, California. PSI at ¶'s 24-26. Varon, at the same meeting provided stickers to be placed on the cocaine. *Id.* Eventually, the 70 kilograms of cocaine were loaded onto an airplane departing Bogota for Mexico City. *Id.* at ¶ 26. Fair consideration should be given in this matter as co-defendant, Paredes-Aristizibal, was not held accountable for the 70-kilogram deal.

## CONCLUSION

Beyond whatever sentence the Court imposes, Mr. Cardona-Londono has been punished, and will continue to be punished as a result of the conduct that brings him before the Court for sentencing. In light of all the factors mentioned *supra*, his clean criminal record, the fact that Mr. Cardona-Londono lead a productive life as a contributing member of society for many years prior to these events, and has done all that he can to make amends, the Court is urged to employ fair and due consideration to the characteristics mentioned *supra* that weigh in favor of a sentence "sufficient, but not greater than necessary" to comply with the goals of sentencing. *See* 18 U.S.C. § 3553(a).

Respectfully submitted,

Paul D. Petruzzi, Esq.
**Law Offices of Paul D. Petruzzi, P.A.**
8101 Biscayne Blvd.
Penthouse 701
Miami, FL 33138
Telephone: (305) 373-6773
Facsimile:  (305) 373-3832
E-mail: petruzzi-law@msn.com

By:    /s/ Paul D. Petruzzi
       **PAUL D. PETRUZZI, ESQ.**
       Florida Bar No. 982059

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 27, 2024, a true and correct copy of the foregoing was furnished to the Assistant United States Attorney assigned to this matter via e-mail.

By:   /s/ Paul D. Petruzzi
**PAUL D. PETRUZZI, ESQ.**
Attorney for Defendant
